**MUNTZ IMPORTS, INC.**

v.

**UNITED STATES.**

**R.D. 11769; Reappraisement R69/12121.**

*United States Customs Court.*
*April 27, 1972.*

Glad & Tuttle, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Susan C. Cassell, New York City, Trial Atty.), for defendant.

MALETZ, Judge:

This appeal for reappraisement[1] involves the value of repairs on 2,500 M–30 automobile stereo tape players that had been previously imported from Japan into the United States, found to be defective, and exported back to Japan for repairs. After having been repaired, they were reimported into the United States via the port of Los Angeles. Acting under headnote 2(a), subpart B, part 1, schedule 8 of the tariff schedules, the government appraiser determined that the cost of the repairs to the importer was unreasonable and found the reasonable value of the repairs to be $10.84 per unit. Plaintiff claims that under headnote 2(a) the actual cost to the importer for the repairs is the proper basis for determining the duty, which cost, plaintiff claims, was $2.194 per unit.

The statutory provisions thus referred to read as follows:

*Subpart B headnotes:*

\* \* \* \* \* \*

2. *Articles repaired, altered, processed, or otherwise changed in condi-*

---

[1]. Since trial of this action was held on November 12, 1971, the action is governed by the law and the rules of the court in effect on and after October 1, 1970. See rule 14.9(d).

*tion abroad.*—The following provisions apply only to items 806.20

\* \* \* :

(a) The value of repairs, alterations, processing, or other change in condition outside the United States shall be—

(i) the cost to the importer of such change; or

(ii) if no charge is made, the value of such change,

as set out in the invoice and entry papers; except that, if the appraiser concludes that the amount so set out does not represent a reasonable cost or value, then the value of the change shall be determined in accordance with section 402 or 402a of this Act.[2]

\* \* \* \* \* \*

806.20 Articles exported for repairs or alterations .............A duty upon the value of the repairs or alterations (see headnote 2 of this subpart)

The basic issue in the case is whether or not headnote 2(a) authorizes the appraising official to determine the value of repairs in accordance with section 402 or 402a of the Tariff Act of 1930, as amended, when he concludes from the invoice and entry papers that the *cost* to the importer for the repairs is unreasonable.

2. The briefs of both parties quote headnote 2(a) incorrectly from the standpoint of paragraphing. Thus their briefs quote this portion of the statute to read as follows:

   (a) The value of repairs, alterations, processing, or other change in condition outside the United States shall be—
   (i) the cost to the importer of such change; or
   (ii) if no charge is made, the value of such change, as set out in the invoice and entry papers; except that, if the appraiser concludes that the amount so set out does not represent a reasonable cost or value, then the value of the change shall be determined in accordance with section 402 or 402a of this Act.
   However, examination of this headnote as reproduced in the Statutes at Large (77A Stat. 407), the United States Code (19 U.S.C. § 1202), and the Tariff

The facts giving rise to the controversy are these. Plaintiff Muntz imported a large number of M–30 stereo tape players that it had purchased from the Maruwa Electronic Corporation of Japan. Thereafter, many of these tape players were returned to plaintiff as defective. After accumulating 4,662 of these defective machines, plaintiff returned them to the Japanese manufacturer, Maruwa, late in 1967. In early 1968, representatives of plaintiff went to Japan and explained to the president of Maruwa that in addition to the 4,662 tape players, there were many other defective players in dealers' hands that would also be returned to Maruwa.[3] The parties thereupon agreed in writing that Maruwa would repair the 4,662 units and any other defective tape players at a total charge to plaintiff of $20,000. The agreement also provided that for the original number of 4,662 units, the "Conversion cost [is] US $10.84 per unit."

As previously observed, 2,500 stereo players are involved in the present action. In addition, the record shows that a total of 9,116 defective M–30 tape players were returned by plaintiff to Maruwa, repaired and reimported.[4]

■ Against this background, plaintiff contends that under headnote 2(a)

   Commission's Tariff Schedules of the United States Annotated (1972) leaves no doubt that, as quoted in the body of this opinion, the language of the headnote starting with the words "as set out in the invoice and entry papers" comes out to the margin and hence is applicable to both subparagraph (i) and subparagraph (ii).

3. The defect in the players was caused by the power transistors of which there were four in each unit. Initially Maruwa used large power transistors in the units but later substituted transistors with half the power—many of which burned out. The cost of a replacement transistor was about 30 cents.

4. Since the cost to the plaintiff for the repair of the 9,116 units was $20,000, the cost to it per unit amounted to $2.194— which cost, as previously indicated, is claimed to be the proper dutiable value.

where there is any cost to the importer for repairs, that cost—even if unreasonable—must be the dutiable value of the repairs. For, according to plaintiff, headnote 2(a) (i) clearly states the value of the repairs abroad for duty purposes shall be "the cost to the importer of such change." Then, says plaintiff, Congress added an alternative method of finding a value of the repairs which is to be used *only* "if no charge is made" —which is not the case here. In other words, plaintiff argues that only when no charge is made to the importer for repairs does the appraiser have the authority to determine if the value of the change "as set out in the invoice and entry papers" represents a reasonable cost or value. We do not agree.

In our view, headnote 2(a) is unambiguous and its plain meaning makes clear that if the appraiser concludes that the amount for *cost* or value as set out in the invoice and entry papers does not represent a reasonable cost to the importer (subparagraph 2(a) (i)) or a reasonable value if no charge is made (subparagraph 2(a) (ii)), then the appraiser is authorized to determine the value of the repairs in accordance with section 402 or 402a of the Tariff Act of 1930, as amended. It is to be noted in this connection that the portion of the headnote starting with the words "as set out in the invoice and entry papers" is a statement of general application which covers both subparagraph (i) relating to cost and subparagraph (ii) relating to value. See note 2, *supra*. And, as quoted previously, this portion of the headnote specifies that "if the appraiser concludes that the amount * * * set out [in the invoice and entry papers] does not represent a reasonable *cost* or value, then the value of the change shall be determined in accordance with section 402 or 402a * * *." [Emphasis added.]

Moreover, applying plaintiff's interpretation of headnote 2(a)—that where there is any cost to the importer, that cost must be taken as the dutiable value

of the repairs—could well have the anomalous result of requiring a different dutiable value for the same repairs. For example, assume a situation where in one case a small or nominal charge (even of one cent) was made to the importer and in another case involving the same repairs, no charge was made to the importer. In the former case, under plaintiff's interpretation, the cost to the importer (even if nominal) would have to be accepted as the dutiable value, while in the latter case, where there is no charge to the importer, the dutiable value would be either the value of the repairs as set forth in the invoice or entry papers or, if that value were unreasonable, value would be determined in accordance with section 402 or 402a. Certainly the language of headnote 2(a) does not support any such strained interpretation. Indeed, such an interpretation would encourage evasion of customs duties on repairs simply by having the exporter charge the importer only a nominal cost for repairs rather than a cost that had any actual basis.

■ In the present case, the government appraiser concluded that the cost to the importer here was unreasonable and determined that the reasonable value of the repairs was $10.84 per unit. The fact that $10.84 per unit represents the reasonable value of the repairs is fully supported by the record. As previously indicated, the written agreement between Maruwa and plaintiff states that for the original number of 4,662 units, the *"Conversion cost [is] US $10.-84 per unit."* [Emphasis added.] This contract, signed by the parties, is the best evidence of the facts stated therein, i. e., that the actual cost of the repairs was $10.84 per unit, and, in fact, plaintiff has offered no evidence that any other figure represented the reasonable cost or value of the imported players. In this circumstance, it is evident that $10.84 per unit, agreed upon by the importer as the actual cost of the repairs, represents a reasonable value for the

repairs.[5] Thus, the court concludes that the correct dutiable value for the repairs is $10.84, as found by the appraiser.[6]

The appeal for reappraisement is dismissed and the appraised value affirmed. Judgment will be entered accordingly.

---

5. The fact that the new M-30 stereo tape player initially cost approximately $16.00 and the repairs were $10.84, or more than one-half the cost of the article, is not material to the issue here. See e. g., Waller-Muller Co. v. United States, 60 Treas.Dec. 548, 551, T.D. 45167 (1931); Geo. W. Brady v. United States, 58 Treas. Dec. 435, T.D. 44327 (1930).

6. Defendant argues, in addition, that even assuming the validity of plaintiff's claim that the "cost" to it controls the value determination, the appraisement should be based upon the 2,500 players involved in the present importation rather than upon the total 9,116 tape players repaired. Otherwise, defendant argues, appraisement of merchandise which is the subject of a fixed-fee, open-ended executory contract would have to be withheld until some time in the future, pending the completion of the contract—which assertedly would result in administrative chaos. It is unnecessary, however, for the court to reach this question in view of its conclusion affirming the appraised values.